Richard D. BOKUM, II, Margaret B. Bokum, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 90–5810.

United States Court of Appeals, Eleventh Circuit.

June 4, 1993.

---

Richard C. Conover, Bozeman, MT, for petitioners-appellants.

Gary R. Allen, Chief, Gilbert S. Rothenberg, Asst. Chief, Teresa E. McLaughlin, Brian C. Griffin, Deputy Asst. Atty. Gen., Bridget M. Rowan, Richard Farber, Appellate Section, Tax Div., Dept. of Justice, Washington, DC, for respondent-appellee.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

In this appeal, Richard and Margaret Bokum, husband and wife, level three independent challenges against a Tax Court judgment that found them liable for an income tax deficiency of $2,570,061.99 for the 1971 tax year. None of the challenges has merit, and we therefore affirm.

## I.

The deficiency in this case stems from the Internal Revenue Commissioner's denial of a limited partnership loss claimed as a deduction on the Bokums' 1971 joint income tax return. On December 7, 1971, Mr. Bokum purchased, for $2,100,000.00, an 86% interest in the Special Quinta 1971 Drilling Venture (Special Quinta), a limited partnership that invested in oil, gas, and mineral leases. Special Quinta was a tax shelter, and Mr. Bokum made the purchase because the tax savings he expected from the deductions generated by the partnership would far exceed his payments to Special Quinta.[1] In their 1971 joint tax return, filed on April 15, 1972, the Bokums took as a deduction Mr. Bokum's pro rata share, $4,202,345.00, of Special Quinta's 1971 operating losses.

In January 1975, the IRS advised the Bokums by letter that it was investigating Special Quinta and asked them to waive the statute of limitations provision that precluded the IRS from challenging a tax return after three years. *See* 26 U.S.C. § 6501(a) (1988).[2] The Bokums refused to execute a waiver, and on April 10, 1975, the Commissioner issued a notice of deficiency, disallowing the Special Quinta deduction and claiming an additional tax liability of $2,570,061.99. In July 1975, the Bokums filed a petition in the Tax Court challenging the deficiency.

Proceedings in the Bokums' case and a number of other cases involving similar limited partnerships organized by Special Quinta's general partner, Comprehensive Resources Corporation, were stayed pending the ultimate resolution of *Brountas v. Commissioner*, 73 T.C. 491, 1979 WL 3779 (1979), which had been selected as the test case for the determination of the validity of this type of deduction.

The initial decision in *Brountas*, which was handed down by the Tax Court in 1979, held that the taxpayers could deduct their full share of the limited partnership's losses. 73 T.C. 491. The First Circuit reversed. *Brountas v. Commissioner*, 692 F.2d 152, 161 (1st Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983) (concluding that the limited partnership's losses were not deductible); *see also CRC Corp. v. Commissioner*, 693 F.2d 281 (3d Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). After the First Circuit's decision, most of the cases that had been stayed settled.

The Bokums, however, decided to prosecute their Tax Court petition to final judgment. While the prosecution was proceeding, but prior to the trial of the case, the IRS, in July 1984, sent the Bokums a letter stating, among other things, that the statute of limitations had run on the Commissioner's right to challenge the 1971 tax return. The statement was erroneous since the statute of limitations had not run. Nonetheless, the Bokums sought to take advantage of it.

The Bokums moved for summary judgment, contending that the letter equitably estopped the Commissioner from denying that the statute of limitations had run. The court concluded that the Commissioner's notice of deficiency had timely issued, denied their motion, and the case proceeded to trial. In a post-trial brief submitted prior to the entry of judgment, the Bokums altered their estoppel argument; they claimed that the Commissioner should be estopped because the July 1984 letter had led them to believe that the IRS would drop their claim for additional taxes for the 1971 tax year if they waived their rights to refunds for the 1973 and 1974 tax years. The court found this new argument unpersuasive. It concluded that the First Circuit's opinion in *Brountas* controlled its decision, and held the Bokums jointly liable for the asserted tax deficiency. The Bokums appeal.

## II.

The Bokums challenge the Tax Court's judgment on three grounds, which we ad-

---

1. Special Quinta's tax shelter operation is described in detail in the Tax Court's opinion in this case, *Bokum v. Commissioner*, 58 T.C.M. (CCH) 1183, 1990 WL 1108 (1990). The precise nature of the scheme is irrelevant to the issues we must decide.

2. For convenience, this opinion cites to the 1988 version of the Internal Revenue Code. Unless otherwise noted, the provisions cited are, in all relevant respects, the same as those in effect for the 1971 tax year.

dress in turn below. First, the Commissioner failed to "determine" the alleged deficiency. *See* 26 U.S.C. § 6212(a) (1988). Second, the court should have held the Commissioner estopped to contest the 1971 tax return. The Bokums' final argument is that Mrs. Bokum is an "innocent spouse" under 26 U.S.C. § 6013(e) (1988)[3] and, thus, cannot be held liable for the deficiency. We conclude that each of these arguments is without merit.

### A.

■ Section 6212(a) of the Tax Code provides that "[i]f the Secretary determines that there is a deficiency in respect of any tax imposed ..., he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." 26 U.S.C. § 6212(a). The Bokums claim that the Commissioner failed to "determine" their deficiency within the meaning of this statutory provision because at the time the notice of deficiency issued, the IRS had not audited Special Quinta's partnership return. According to the Bokums, section 6212 required the Commissioner, in making the deficiency determination in this case, to do more than simply review their personal 1971 tax return. Our precedent defeats their argument.

■ A notice of deficiency, while essential, serves largely as the taxpayers' "ticket to the Tax Court." *Stoecklin v. Commissioner,* 865 F.2d 1221, 1224 (11th Cir.1989). This notice permits taxpayers to petition the Tax Court to redetermine their tax liability without first paying the tax and then seeking a refund in district court. *See* 26 U.S.C. § 6213(a) (1988). Although the statute does not indicate what a notice of deficiency should contain, we have held that a notice is sufficient if it demonstrates that "the IRS has determined that a deficiency exists for a particular year and specif[ies] the amount of the deficiency." *Stoecklin,* 865 F.2d at 1224 (quoting *Benzvi v. Commissioner,* 787 F.2d 1541, 1542 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986)); *see also Estate of Yaeger v. Commissioner,* 889 F.2d

29, 34 (2d Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990); *Abrams v. Commissioner,* 787 F.2d 939, 941 (4th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986). Here, the notice of deficiency plainly indicated that the IRS was disallowing a certain deduction on the Bokums' 1971 tax return, identified the source of the deduction, and recomputed the tax liability using the taxpayers' tax rate. The notice unquestionably met the minimum requirements.

The Bokums nevertheless maintain that the notice was inadequate. To support their argument they cite *Scar v. Commissioner,* 814 F.2d 1363 (9th Cir.1987). That case is inapposite. In *Scar,* the notice of deficiency sent to the taxpayers was facially incorrect. The notice indicated that the IRS was disallowing a deduction for losses in a partnership in which the taxpayers had no interest. *Id.* at 1370 n. 11. The notice also stated that the IRS had not even examined the taxpayers' tax return. Finally, in calculating the tax liability the Commissioner failed to use the applicable tax rate. *Id.* at 1366. In sum, we agree with the Tax Court that the Commissioner properly "determined" the deficiency within the meaning of section 6212(a).[4]

### B.

The Bokums next claim that the doctrine of equitable estoppel precludes the Commissioner from pursuing his claim of deficiency. The IRS sent the Bokums a letter in July 1984 stating:

> In your case, the Internal Revenue Service is barred from disallowing any amount of your claimed loss on your return for your first year of involvement (1971) with certain of the ... partnerships, [including Special Quinta,] due to the expiration of the statute of limitations on your return for that year. However, you have filed protective claims for subsequent tax years[, 1973 and 1974,] relative to your partnership interest(s). To dispose of

---

3. This version of the provision was enacted July 18, 1984, and applies retroactively. *See* Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 424(c), 98 Stat. 494, 803 (1984).

4. The Bokums also argue that the Commissioner's determination of their tax deficiency was "arbitrary." This claim is patently meritless.

**1140**

your case for those years and in keeping with the overall proposal for settlement ... it will be necessary to disallow your protective claim(s) for refunds filed for your subsequent year(s) return(s).

The Bokums contend that this letter led them to believe that the IRS would drop its claim for additional taxes in the 1971 tax year if they withdrew the protective claims they had filed for the 1973 and 1974 tax years. The Bokums had filed these protective claims in order to toll the three-year statute of limitations period that had been running on their right to sue for refunds for those two years in federal district court. According to the Bokums, after receiving the July 1984 letter, they withdrew their protective claims, and in consequence lost their right to sue for refunds. They now argue that because of his actions, the Commissioner should be equitably estopped from challenging their 1971 return.

As a threshold matter, the Commissioner contends that the Tax Court did not have jurisdiction to determine an equitable estoppel claim, and thus we cannot entertain this claim on appeal. We disagree with the Commissioner and conclude that the Tax Court has the authority to entertain an equitable estoppel claim in an action over which it has jurisdiction. Nevertheless, we find the Bokums' equitable estoppel claim meritless.

### 1.

■ The Commissioner correctly notes that the Supreme Court has held that "[t]he Tax Court is a court of limited jurisdiction and lacks general equitable powers," *Commissioner v. McCoy,* 484 U.S. 3, 7, 108 S.Ct. 217, 219, 98 L.Ed.2d 2 (1987) (per curiam), and that a "court of appeals lacks jurisdiction to ... grant relief that is beyond the powers of the Tax Court itself." *Id.* at 6, 108 S.Ct. at 219. This statement, however, does not speak directly to the issue at hand. The Supreme Court wrote these words in decid-

ing the availability of appellate review of a Tax Court decision that drew on equitable considerations to adjudicate an issue over which it had no subject matter jurisdiction. Taken in context, the Supreme Court's pronouncement means that the Tax Court has no equitable power to expand its statutorily prescribed jurisdiction. This is quite distinct from saying that the Tax Court has no equitable powers in cases properly brought before it. *See Woods v. Commissioner,* 92 T.C. 776, 787, 1989 WL 32907 (1989) (finding that the Tax Court has jurisdiction to hear an equitable estoppel claim).

■ Although of limited jurisdiction, the Tax Court must have the power to consider an equitable estoppel claim, if considering the claim is necessary to the appropriate disposition of the case before it. While not itself conclusive, we note that a number of circuits, ours included, have decided equitable estoppel claims originating in the Tax Court on the assumption that the Tax Court had authority to decide them. *See Young v. Commissioner,* 926 F.2d 1083, 1090 (11th Cir.1991); *Graff v. Commissioner,* 673 F.2d 784, 785 (5th Cir.1982); *Warner v. Commissioner,* 526 F.2d 1, 2 (9th Cir.1975); *Estate of Geiger v. Commissioner,* 352 F.2d 221, 224, 230 (8th Cir.1965), *cert. denied,* 382 U.S. 1012, 86 S.Ct. 620, 15 L.Ed.2d 527 (1966); *see also Reynolds v. Commissioner,* 861 F.2d 469, 472 (6th Cir.1988) (recognizing that the Tax Court can hear "judicial estoppel" claims).

■ If the Tax Court lacked authority to entertain a claim of equitable estoppel, taxpayers with such a claim would no longer have a choice of fora for their tax issues. They would effectively be forced to pay their taxes and sue for a refund, submitting all of their claims to the district courts. Taxpayers would then be barred by res judicata from relitigating a claim in the Tax Court.[5] Thus, taxpayers would essentially be denied the right to challenge deficiencies in the Tax

---

**5.** A litigant is barred from bringing claims and issues determined in Tax Court to a district court. *See First Nat'l Bank of Chicago v. United States,* 792 F.2d 954, 956 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); *United States v. Jenkins,* 780 F.2d 518, 519–20 (5th Cir.1986); *Russell v. United States,* 592 F.2d 1069, 1071 (9th Cir.), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979); *Silver Brand Clothes, Inc. v. United States,* 544 F.2d 749, 750 (4th Cir.1976). It stands to reason that a taxpayer must also be barred from relitigating in the Tax Court a claim determined in the district court.

Court if they wanted to assert an equitable estoppel claim. This would be an unfair choice to pose to taxpayers, and would undermine the purpose of the Tax Court. We therefore conclude that the Tax Court did have jurisdiction over the Bokums' equitable estoppel claim.

2.

■ Although the Tax Court had jurisdiction to hear the Bokums' equitable estoppel claim, we nonetheless conclude that the claim must fail. Equitable estoppel claims lodged against the government are of a different ilk from those asserted against a private party. The Supreme Court has stated that equitable estoppel will not lie against the government as against private litigants. *Heckler v. Community Health Serv.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). The Court emphasized that it has "reversed every finding of estoppel [against the government]" that has come before it. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 2469, 110 L.Ed.2d 387 (1990). The Supreme Court has, however, refused to adopt a "flat rule" prohibiting estoppel claims against the government, leaving open the question of whether such a claim is ever available. *Id.* at 420, 110 S.Ct. at 2470–71; *Heckler*, 467 U.S. at 60, 104 S.Ct. at 2224.

While the availability of the claim may be uncertain, the Supreme Court has made it clear that "however heavy the burden might be when an estoppel is asserted against the government, the private party surely cannot prevail without at least demonstrating that the traditional elements of estoppel are present." *Heckler*, 467 U.S. at 61, 104 S.Ct. at 2224; *see also Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir.1992); *Brundidge Banking Co. v. Pike County Agric. Stabilization & Conservation Comm.*, 899 F.2d 1154, 1160 (11th Cir.1990).[6]

In this case, the Bokums cannot establish all of the elements of a traditional equitable estoppel claim. These elements are: " '(1) words, acts, conduct or acquiescence causing

another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated.' " *United States v. Aetna Ins. Co.*, 923 F.2d 1521, 1526 (11th Cir.1991) (quoting *FDIC v. Harrison*, 735 F.2d 408, 413 (11th Cir.1984)).

We assume, for sake of discussion, that the Bokums have made out the first two elements. They fail, however, to make out the third: as a matter of law, they did not rely to their detriment on the letter. Contrary to their representation, they did not give up their right to sue for refunds for the 1973 and 1974 tax years.

A taxpayer must register a claim with the IRS seeking a refund for a tax year within three years. *See* 26 U.S.C. § 6511(a) (1988). The Tax Code requires that such a claim be made before a taxpayer may sue for a refund in district court. 26 U.S.C. § 7422(a) (1988). A protective claim, such as those filed by the Bokums serves this purpose. It notifies the IRS of the taxpayer's claim for refund and tolls the statute of limitations. Once the taxpayer notifies the IRS that a refund is owed, a taxpayer may bring a suit in a district court, but not later than two years after the date the IRS issues a formal notice disallowing the refund. If the IRS does not act on the claim, the taxpayer must wait six months to bring suit. 26 U.S.C. § 6532(a)(1) (1988). If a taxpayer waives the requirement for an official notice of disallowance, the two-year statute of limitations begins on the date the waiver was signed. 26 U.S.C. § 6532(a)(3).

Under the Code, the Bokums maintained their right to seek their refunds regarding the partnership losses for the 1973 and 1974 tax years for two years after the date they waived the right for the IRS officially to disallow their claims to a refund. The letter clearly indicated that the IRS was going to disallow the Bokums' refund claims; the Bokums merely waived the technical require-

---

**6.** As we indicate in text, it is unclear precisely when the government may be equitably estopped. *See Ferry*, 954 F.2d at 661 n. 6. Because we decide that the Bokums did not demonstrate that an equitable estoppel claim would lie against even a private party, we need not consider whether such a claim would lie against the government.

ment that the Service officially notify them of the disallowance.[7] The Bokums maintained the right to challenge their 1973 and 1974 tax returns and sue for a refund in district court. Thus, the Commissioner's erroneous letter had no effect on the Bokums' ability to pursue their claims for a refund. The Bokums were unharmed.

Moreover, it is equally clear that the Bokums in no way "relied" upon the letter. Instead of informing the Tax Court or the IRS that the dispute over their 1971 return had been settled, the Bokums continued litigating the validity of the deduction they had taken on that return for Mr. Bokum's share of the Special Quinta losses. In fact, two years after receiving that letter, they amended their petition to claim that Mrs. Bokum was an innocent spouse. Under these circumstances, one could hardly hold the Commissioner estopped to deny that the letter "settled" the present controversy over the 1971 return.[8]

### C.

■ The Bokums' final contention is that Mrs. Bokum should be considered an "innocent spouse" under 26 U.S.C. § 6013(e), thus relieving her of joint liability for the taxes. Section 6013(e)(1)(B) requires that there be a "substantial understatement of tax attributable to grossly erroneous items of one spouse" in order to satisfy the innocent spouse exception. The statute defines "grossly erroneous" to mean a deduction having "no basis in law or fact." 26 U.S.C. § 6013(e)(2). The Bokums contend that the partnership loss deduction was "grossly erroneous," because their deduction had no "basis in law or fact."

We have held that "[g]enerally, a deduction has no basis in law or fact if it is 'fraudulent,' 'frivolous,' 'phony,' or 'ground-

less.'" *Stevens v. Commissioner*, 872 F.2d 1499, 1504 n. 6 (11th Cir.1989); *see also Ness v. Commissioner*, 954 F.2d 1495, 1498 (9th Cir.1992) ("A deduction has no basis in law ... when no substantial legal argument can be made to support its deductibility." (quoting *Douglas v. Commissioner*, 86 T.C. 758, 762–63, 1986 WL 22118 (1986))).

■ The essence of the Bokums' argument is that the deduction is "groundless" because it was not allowed. While the IRS may disallow "groundless" deductions, it does not follow that every deduction that is disallowed is necessarily "groundless." *See Ness*, 954 F.2d at 1498; *Shenker v. Commissioner*, 804 F.2d 109, 114 (8th Cir.1986); *Douglas*, 86 T.C. at 763 ("Petitioner may not rely on the disallowance ... to prove a lack of basis in fact or law.").

In this case, the Tax Court found, and we agree, that the Bokums' deduction of the partnership losses was not grossly erroneous because there was a good legal argument for allowing such deductions at the time. The Tax Court upheld a similar deduction in *Brountas*, 73 T.C. at 578. Oil and gas ventures became popular investments precisely because the IRS recognized the type of deduction at issue here. We cannot say that before the *Brountas* decision, such a deduction could be considered "groundless." [9]

The Tax Court correctly found that the deduction of the partnership losses that the Bokums claimed on their 1971 joint income tax returns was not "grossly erroneous" within the meaning of 26 U.S.C. § 6013(e)(2). Because Mrs. Bokum cannot properly be considered an innocent spouse, she remains jointly liable for the tax deficiency.

### III.

We conclude that the notice of deficiency was sufficient, the Commissioner is not es-

---

**7.** The Commissioner denies that the Bokums executed such a waiver. The Tax Court made no findings on the matter. We assume that the Bokums did execute a waiver.

**8.** The Bokums also claim that the letter constituted an "accord and satisfaction" resolving the matter. This claim is meritless. A tax dispute must be settled pursuant to the exclusive and strictly construed requirements provided in 26 U.S.C. §§ 7121, 7122 (1988). *See Klein v. Com-*

*missioner*, 899 F.2d 1149, 1152 (11th Cir.1990). We agree with the Tax Court that the letter did not constitute a final agreement or compromise provided for in those sections.

**9.** In 1976, Congress added § 465 to the Tax Code to prohibit such deductions. Thus, if a taxpayer (or spouse) claimed such a deduction after that time, our analysis might be different. *See Ness*, 954 F.2d at 1498.

topped from asserting this deficiency, and the deduction claimed on the Bokums' 1971 tax return was not "grossly erroneous" so as to render Mrs. Bokum eligible for the innocent spouse exception. We, therefore, affirm the judgment of the Tax Court.

AFFIRMED.