**FIRST UNION NATIONAL BANK OF FLORIDA, a National Banking Association, Plaintiff,**

v.

**ROYAL TRUST TOWER, LTD., a Florida Limited Partnership, et al., Defendants.**

v.

**The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Southeast Bank, N.A., Counter–Defendant.**

**FIRST UNION NATIONAL BANK OF FLORIDA, a National Banking Association, Plaintiff,**

v.

**INTERNATIONAL INVESTMENT BANKERS, INC., a Florida corporation; et al., Defendants.**

v.

**The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Southeast Bank, N.A., Counter–Defendant.**

No. 91–2277–CIV.

United States District Court, S.D. Florida, Miami Division.

June 24, 1993.

Juan Aedo Gonzalez, Haley, Sinagra & Perez, P.A., Miami, FL for F.D.I.C. and Southeast Bank N.A.

Robert Thomas Wright, Jr., Carol M. Sire, Mershon, Sawyer, Johnston, Dunwody & Cole, P.A., Miami, FL, for First Union Nat. Bank of Florida.

Nanci Sondra Landy, Michael R. Gibbons, Gilbridge, Heller & Brown, P.A., Miami, FL, Read K. McCaffrey, Patton, Boggs & Blow, Baltimore, MD, for Royal Trust Tower, Ltd.

Nanci Sondra Landy, Gilbride, Heller & Brown, P.A., Miami, FL, Read K. McCaffery, Patton, Boggs & Blow, Baltimore, MD, for Caroline Weiss, Intercontinental Properties, Inc., Intercontinental Inv. Bankers, Inc. and Towers of Blue Lagoon (1) Inc.

## ORDER ON AMENDED MOTION TO DISMISS

EDWARD B. DAVIS, District Judge.

Before the Court is the Federal Deposit Insurance Corporation's Amended Motion to Dismiss Counterclaim with Prejudice. The sole issue presented by the Motion is whether the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1821(d), requires a claimant to perform an affirmative action within 60 days following the FDIC's administrative review in order to continue a claim filed before the FDIC's receivership. As the following discussion reveals, FIRREA does require such an action, so the Court will grant the FDIC's Motion.

## I. Background

This action began in state court as a suit by Southeast Bank, N.A., against a Florida limited partnership, Royal Trust Tower, Ltd., and others to recover debts and foreclose security interests in real and personal property. The Defendants themselves filed counterclaims of fraud and breach of contract, among others. In the final quarter of 1991, the Office of the Comptroller of the Currency found Southeast Bank was insolvent and appointed the FDIC as receiver. Then the FDIC removed the case to this Court.

After removal, the FDIC moved to dismiss for lack of subject matter jurisdiction, or alternatively, to stay the action pending exhaustion of the administrative procedures set forth in 12 U.S.C. § 1821(d). The Counterclaimants objected to the dismissal but consented to the stay. In their Memorandum of Law, the Counterclaimants argued that FIRREA preserves subject matter jurisdiction for claims that exist prior to receivership:

> 12 U.S.C. § 1821(d)(6) provides for either agency review or judicial determination of claims which have been disallowed by the FDIC. Within sixty days after the disallowance of an administrative claim or the 180–day period provided to the FDIC to determine a claim, the claimant may "continue an action commenced before the appointment of a receiver." Consequently, FIRREA explicitly recognizes that this Court has subject matter jurisdiction over this action.

(Def.'s Notice Consent at 2.) Subsequently, on December 5, 1991, the Court denied the Motion to Dismiss, but granted the stay.

On March 20, 1992, the date that the initial stay was to expire, the Counterclaimants moved to extend the stay, and the FDIC did not oppose the motion. Consequently, on March 31, 1992, the Court granted the Counterclaimants' motion, staying the action until the earlier of 180 days from the date the Counterclaimants filed their claim with the FDIC, or the Counterclaimants' filing of a

Notice of Termination of Stay stating that their claims were allowed or denied.[1]

The Counterclaimants filed their administrative claims on December 27, 1991. Ultimately, the claims were denied. The FDIC contends that on May 1, 1992, the Counterclaimants were notified of the denial; the Counterclaimants themselves contend the claims were refused on July 15, 1992.

Finally, on December 7, 1992, the Counterclaimants filed a "Status Report and Notice of Intent to File Amended Administrative Claim." In this document, the Counterclaimants noted that "on July 15, 1992 the FDIC disallowed [their] claims." They also notified the Court "that it is the intent of the Defendant/Counterclaimants to file an Amended Administrative claim with the FDIC____" Subsequently, the FDIC filed this Amended Motion to Dismiss.

## II. Discussion

Presently the FDIC contends that the counterclaims must be dismissed because the Counterclaimants failed to continue prosecuting their action in time. The FDIC relies on the limitations provision of FIRREA, which states:

(B) Statute of limitations

If any claimant fails to—

(i) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or

(ii) file suit on such claim (*or continue an action commenced before the appointment of the receiver*),

before the end of the 60–day period described in subparagraph (A), the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

12 U.S.C. § 1821(d)(6)(B) (emphasis added). The 60–day period begins following the FDIC's disallowance of the claim. *Id.* subpara. (d)(6)(A).

As the highlighted language reveals, the statutory limitations period may bar even a claim that had been pending before the insured bank fell into receivership, if the claimant fails to continue the action in time. The legislative history of FIRREA supports this conclusion. *See* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 ("Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim."). The case law, though sparse, also supports this reading. *Praxis Properties, Inc. v. Colonial Sav. Bank,* 947 F.2d 49, 63 & n. 13 (3d Cir.1991) (noting that Paragraph (d)(6) requires claimants to continue pre-existing actions within 60 days of disallowance); *Rey v. Oak Tree Sav. Bank,* 817 F.Supp. 634 (E.D.La.1993) (noting that claimants must file a motion to renew or reactivate following an administrative stay).

Applied to this case, the limitations provision of Section 1821(d)(6)(B) bars the Counterclaimants' action. Following the stay, the Counterclaimants did not prosecute their suit or in any way correspond with the Court until December 7, 1992, when they filed their "Status Report and Notice of Intent to File Amended Administrative Claim." Whether the FDIC disallowed the claim on May 1 or July 15, the 60–day limitation had run well before the December 7 filing.

Nevertheless, the Counterclaimants maintain that a pre-receivership action exclusively requires compliance with the 90–day stay provision of Section 1821(d)(12)(A)(ii). The Tenth Circuit follows this rule, which limits administrative stays for pre-existing claims. *Marc Dev., Inc. v. FDIC,* 771 F.Supp. 1163 (D.Utah 1991), *affirmed and adopted,* 992 F.2d 1503 (10th Cir.1993). However, as several other courts that have addressed the

---

1. Also, without recognizing the Order of March 31, 1992, the Court again granted the Counterclaimants' Motion to Stay on November 25, 1992. Not informed of the status of the administrative procedures, the Court stayed the action "pending final resolution of administrative claims," although the FDIC had already denied the claims months earlier. The Court also ordered the Counterclaimants to file a status report explaining the state of the claims procedures, which led to the Counterclaimant's December 7 filing.

issue, this district has not accepted the Tenth Circuit's interpretation of FIRREA. *See Solano v. Southeast Bank, N.A.,* 796 F.Supp. 506, 508 (S.D.Fla.1992); *Coston v. Gold Coast Graphics, Inc.,* 782 F.Supp. 1532, 1536–37 (S.D.Fla.1991); *see also Marc Dev., Inc. v. FDIC,* 992 F.2d at 1503, 1508–09 (10th Cir. 1993) (Logan, J., dissenting in part) (noting that several district courts have allowed stays in pre-existing claims against insured banks in receivership). *But see In re General Dev. Corp.,* 135 B.R. 1020 (S.D.Fla.1991) (adopting the reasoning of *Marc Development*). Moreover, these opinions debate whether the FDIC enjoys a stay of 90 days or some other interval for pre-receivership claims, *see, e.g., Marc Dev., Inc.,* 771 F.Supp. at 1163, or whether the FDIC's receivership divests the court of subject matter jurisdiction, *see Marquis v. FDIC,* 965 F.2d 1148 (1st Cir.1992). They, as the Counterclaimants themselves, do not address the limitations requirement of "continu[ing] an action commenced before the appointment of the receiver" within 60 days of the FDIC's disallowance of the claim.

The Counterclaimants also point out that the FDIC's argument was rejected in *New Bank v. Callahan,* 798 F.Supp. 73 (D.N.H. 1992). In *Callahan,* the court stated that "[n]either the statute nor relevant case law—the latter of which FDIC has failed to provide—indicates that any 'affirmative action' is necessary to 'continue' an action commenced before the appointment of a receiver, or to keep the action 'alive'." *Id.* at 76 (citation omitted). The court relied on language in *Marquis v. FDIC,* 965 F.2d at 1154, which stated that claims "can simply be resumed" following administrative review. *New Bank,* 798 F.Supp. at 76.

The reasoning in *New Bank* is not persuasive. Under its reading of the statute, to "continue" an action means to continue to do nothing, as litigants do when the court suspends the case during the stay. This construction disregards Congress's directive. The statute plainly states that "an action commenced before the appointment of the receiver" will be barred if the claimant fails "to continue" it in time. If "to continue" means to do nothing, there will never be a situation where a pre-existing claim will be barred, because the claimant will always do, at the very least, nothing. The limitations clause for pre-existing claims would become a dead letter. Furthermore, the legislative history of the statute contemplates a "motion to renew," which is obviously an affirmative act. Finally, the basis of the *New Bank* decision—the First Circuit's dictum in *Marquis* that the claim can be "resumed"—itself implies some affirmative action. Just as it would be unreasonable to believe Congress intended claimants to "continue" doing nothing, it would be unreasonable to believe the First Circuit meant the claimant should "resume" doing nothing.

The Counterclaimants also compare Subparagraph (d)(6)(B) with (d)(8)(D), which describes the limitations period for actions with expedited claim determinations by the FDIC. Subparagraph (d)(8)(D) explicitly requires "a motion to renew," whereas (d)(6)(B) does not. As the Counterclaimants argue, the silence of Subparagraph (d)(6)(B) implies that Congress did not intend to require a "motion to renew" in that provision.

This argument fails as well, for two reasons. First, even if continuing the litigation does not require a "motion to renew," it must require at least some affirmative action, or the statutory requirement is meaningless. Second, rather than exclusion by silence, the principle of reading clauses *in pari materia* should apply. A reading of the statute as a whole indicates that, throughout, Congress equated "continuing" a pre-existing claim with filing a motion to renew. The subparagraph that outlines the period for filing or renewing suit following the expedited determination of claims begins: "Any claimant who files a request for expedited relief shall be permitted to file a suit, or *to continue a suit filed before the appointment of the receiver* ...." 12 U.S.C. § 1821(d)(8)(C) (emphasis added). Subparagraph (d)(8)(D), which immediately follows, begins with a parallel construction: "If an action described in subparagraph (C) is not filed, or *the motion to renew a previously filed suit is not made* ...." These two juxtaposed parallel constructions indicate that Congress likened

"continuing" with "moving to renew" a previously filed suit.

Notably, the highlighted language of Subparagraph (d)(8)(C) is effectively identical to that of Subparagraph (d)(6)(B): one clause says "continue a suit filed before the appointment of the receiver"; the other says "continue an action commenced before the appointment of the receiver." The Counterclaimants do not offer a reasoned explanation why these similar clauses should be treated differently simply because they stand in separate paragraphs. Indeed, coupled with the legislative history previously discussed, the nearly identical language of Subparagraphs (d)(6)(B) and (d)(8)(C) indicates that Congress intended the same meaning each time it outlined the requirement "to continue" pre-existing litigation—that the claimant should file a motion to renew.

In conclusion, the Court holds that 12 U.S.C. § 1821(d)(6)(B) requires some timely, formal affirmative action "to continue" a claim filed before FDIC receivership. Because the Counterclaimants did not follow this requirement, by the mandate of the statute, "they shall have no further rights or remedies with respect to [their] claim." Therefore, it is

ORDERED AND ADJUDGED that the FDIC's Amended Motion to Dismiss Counterclaim with Prejudice, (D.E. 36), is GRANTED, and that the Defendant/Counterclaimants' counterclaims are DISMISSED with prejudice.

DONE AND ORDERED.