**FIRST UNION NATIONAL BANK OF FLORIDA, Plaintiff,**

v.

**NORTH BEACH PROFESSIONAL OFFICE COMPLEX, INC., et al., Defendants.**

No. 91–869–Civ–J–20.

United States District Court, M.D. Florida, Jacksonville Division.

Dec. 15, 1993.

Betsy Cox Mahin, Rogers, Towers, Bailey, Jones & Gay, Jacksonville, FL, for F.D.I.C. and First Union Nat. Bank of Florida, Southeast Bank, N.A.

Parker B. Smith, Smith, Kearsey, Ponte Vedra Beach, FL, Thomas Geoffrey Heekin, Kirschner, Main, Petrie, Graham & Tanner, Jacksonville, FL, Mary S. Kearsey, Law Office of Mary S. Kearsey, Ponte Vedra Beach, FL, for North Beach Professional Office Complex, Inc.

Parker B. Smith, Mary S. Kearsey, Smith, Kearsey, Pointe Vedra Beach, FL, for First Coast Commercial Investments, Inc., First Coast Development, Inc., Steven K. Morrow, Baron L. Bartlett.

Lawrence Joseph Hamilton, II, Holland & Knight, Jacksonville, FL, for Citizens and Southern Nat. Bank of Florida.

## *ORDER*

SCHLESINGER, District Judge.

Before the Court is the Federal Deposit Insurance Corporation's ("FDIC's") Motion to Dismiss Amended Counterclaim With Prejudice for Failure to Comply With the FIRREA Claims Procedure (Doc. No. 95, filed August 30, 1993). In an Order dated November 22, 1993 (Doc. No. 127), the Court directed North Beach Professional Office Complex, Inc. ("North Beach") to show cause why the case should not be dismissed for lack of subject matter jurisdiction. North Beach's Response to November 22, 1993 Order to Show Cause Why its Counterclaim Against the FDIC Should Not be Dismissed for Lack of Jurisdiction (Doc. No. 133) was filed December 3, 1993. Subsequently, the FDIC filed a Motion for Leave to File Memorandum of Law in Opposition to North Beach's Response to the November 22, 1993 Order to Show Cause (Doc. No. 136, filed December 10, 1993). The Court entered an Order granting this Motion (Doc. No. 137, filed December 13, 1993), and the FDIC filed its Memorandum of Law in Opposition to North Beach's Response to Order to Show Cause (Doc. No. 139) on December 13, 1993.

The issues before the Court are whether the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"),

12 U.S.C. § 1821(d), requires a claimant to perform an affirmative action within sixty days following the FDIC's administrative review in order to continue a claim filed before the FDIC's receivership, whether the settlement negotiations taking place during this sixty day period constituted "continu[ing] an action" as required under 12 U.S.C. § 1821(d), and whether the FDIC is equitably estopped from taking the position that North Beach should have taken affirmative action during this sixty day period because of the settlement negotiations.

## I. BACKGROUND

On September 2, 1988, Southeast Bank, N.A., ("Southeast") made a loan to First Coast Commercial Investments, Inc. ("First Coast"). This loan was evidenced by a note and secured by a lien on property ("Property") owned by First Coast. Approximately two months later, First Coast transferred the title to the Property to North Beach Professional Office Complex, Inc. ("North Beach").

On May 9, 1991, Southeast filed a Complaint in the Circuit Court of Duval County, Florida for foreclosure of the mortgage. North Beach answered the Complaint and asserted counterclaims. On September 19, 1991, Southeast was declared insolvent and the FDIC was appointed as Receiver of Southeast. On September 20, 1991, First Union National Bank of Florida ("First Union") purchased certain assets of Southeast, including the subject mortgage loan which Southeast was in the process of foreclosing in state court. However, the FDIC, as Receiver, retained certain liabilities of Southeast.

On October 15, 1991, the FDIC removed the case to this Court (Doc. No. 2) pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and (B). On January 15, 1992, the Court entered an Order (Doc. No. 35) staying the case for one hundred and eighty (180) days to allow North Beach to pursue its counterclaims through the administrative process.

North Beach's claims were eventually denied. On June 8, 1992, North Beach was notified of the denial by certified mail. *See*

Composite Exhibit A attached to the FDIC's Motion to Dismiss. After the denial of the administrative claim, the next action taken in this Court was North Beach's Motion for Remand (Doc. No. 43, filed August 21, 1992).

## II. DISCUSSION

FIRREA establishes a comprehensive administrative claims procedure and limits the jurisdiction of courts over claims against the FDIC in its role as receiver of failed banks. *See Meliezer v. RTC,* 952 F.2d 879 (5th Cir.1992); *Solano v. Southeast Bank, N.A.,* 796 F.Supp. 506 (S.D.Fla.1992). The FDIC's Motion to Dismiss raises issues concerning the FIRREA claims procedure and statute of limitations.

The requirements of FIRREA are as follows: A claimant must present their claims to the Receiver. If the Receiver denies the claims, then the claimant has sixty days after notice of disallowance to either request an administrative review, file suit on such claim, or continue any action commenced before appointment of the Receiver. *See* 12 U.S.C. 1821(d)(6)(A) and (B). Failure to take any of the above courses of action within the prescribed sixty day period is grounds for dismissal for lack of subject matter jurisdiction. *See Southeast Bank v. Gold Coast Graphics Group Partners,* 149 F.R.D. 681 (S.D.Fla.1993); *Lloyd v. FDIC,* 812 F.Supp. 293 (D.R.I.1993); *Capital Data Corp. v. Capital National Bank,* 778 F.Supp. 669, 678 (S.D.N.Y.1991).

The FDIC contends that the counterclaims must be dismissed pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction since North Beach failed to continue prosecuting their action in a timely fashion. A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction. *See Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1157 (5th Cir.1981).[1]

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms. "Facial attacks" and "factual attacks." "Facial attacks" require a court to merely look and see if the plaintiff has alleged a basis of

---

1. All cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, are binding on the Eleventh Circuit and on all district courts within the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

subject matter jurisdiction in the complaint, and the allegations in the complaint are taken as true for the purposes of the motion. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990); *Southeast Bank, N.A. v. Gold Coast Graphics Group Partners*, 149 F.R.D. 681 (S.D.Fla.1993). On the other hand, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleading, and matters outside the pleadings, such as testimony and affidavits, are considered." *Gold Coast Graphics Group Partners*, 149 F.R.D. at 683–84 (citing *Lawrence v. Dunbar*, 919 F.2d at 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981))).

■ In the instant case, the FDIC's Motion to Dismiss relies on factual assertions concerning the date on which the FDIC sent its notice of disallowance of North Beach's claims and other pleadings in the record regarding whether North Beach took the required action pursuant to the administrative procedures under 12 U.S.C. § 1821(d). Thus, this is a factual attack which allows the Court to examine material outside the pleadings in determining whether the Court has jurisdiction to hear the case.

The FDIC relies on the limitations provision of FIRREA, which states that subsequent to the exhaustion of the administrative claims process of FIRREA, a disappointed claimant must then:

> file suit on such claim (*or continue an action commenced before the appointment of the receiver*) before the end of the 60–day period described in subparagraph (A) ... [Otherwise], the claim shall be deemed to be disallowed ... at the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such a claim.

12 U.S.C. § 1821(d)(6)(B)(ii). The sixty day period begins following the FDIC's disallowance of the claim. *Id.* subpara. (d)(6)(A).

"As the highlighted language reveals, the statutory limitations period may bar even a claim that had been pending before the insured bank fell into receivership, if the claim-

ant fails to continue the action in time." *First Union National Bank of Florida v. Royal Trust Tower, Ltd.*, 827 F.Supp. 1564 (S.D.Fla.1993). Legislative history supports this conclusion. *See* H.R.Rep. No. 54(I), 101st Cong., 1st Session. 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 ("Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim"); *see also Praxis Properties, Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 & n. 13 (3d Cir.1991) (stating that Paragraph (d)(6) requires claimants to continue pre-existing actions within sixty days of disallowance of claim); *Rey v. Oak Tree Sav. Bank*, 817 F.Supp. 634 (E.D.La.1993) (noting that claimants must file a motion to renew or reactivate following an administrative stay).

The limitations provision of Section 1821(d)(6)(B) bars North Beach's counterclaims. North Beach did not correspond with the Court until August 21, 1993, when it filed its Motion for Remand. However, the sixty-day limitation period had run before this August 21 filing.

Nevertheless, North Beach contends (1) that no affirmative action needed to be taken within the sixty days in order to continue this action, since the counterclaims were pending when the FDIC became receiver for Southeast Bank, (2) that because settlement negotiations were taking place during the sixty day period following the FDIC's rejection of its administrative claim,[2] the FDIC should be equitably estopped from taking the position that North Beach failed to timely continue the suit and (3) that the settlement negotiations were sufficient "affirmative action" constituting "continu[ing] an action" as required under 12 U.S.C. § 1821(d)(6)(A)(ii).

**A. North Beach's contention that no affirmative action needed to be taken within the sixty days in order to have continued this action, since the counterclaims were pending when the FDIC became receiver for Southeast Bank**

■ North Beach argues that the Court should follow the case of *New Bank v. Calla-*

---

2. The settlement negotiations were documented by correspondence between Plaintiff's counsel

and North Beach's counsel. *See* Sorrell Affidavit at ¶ 4.

*han,* 798 F.Supp. 73 (D.N.H.1992). In *Callahan,* the court stated that "[n]either the statute or relevant case law—the latter of which FDIC has failed to provide—indicates that any 'affirmative action' is necessary to 'continue' an action commenced before the appointment of a receiver." *Id.* at 76. The court relied on language in *Marquis v. FDIC,* 965 F.2d 1148, 1154 (1st Cir.1992), which stated that claims "can simply be resumed" following administrative review.

As stated above, this Court takes the view of that taken by the court in *First Union National Bank of Florida v. Royal Trust Tower, Ltd.,* 827 F.Supp. 1564 (S.D.Fla.1993). Namely, that the reasoning in *Marquis* is not persuasive. Otherwise, "to continue an action means to continue to do nothing." *Id.* at 1567. Such a construction would disregard Congress' directive.

The statute states that "an action commenced before the appointment of the receiver" will be barred if the claimant fails "to continue" it in time. 12 U.S.C. § 1821(d)(6)(B). "If 'to continue' means to do nothing, there will never be a situation where a pre-existing claim will be barred, because the claimant will always do, at the very least, nothing. The limitations clause for pre-existing claims would become a dead letter." *Royal Trust Tower, Ltd.,* 827 F.Supp. at 1567. Furthermore, the legislative history of the statute contemplates the filing of a motion to renew. *See id.;* H.R.Rep. No. 54(I), 101st Cong., 1st Session 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 ("Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim").

**B. North Beach's contention that, because settlement negotiations were taking place during the sixty day period following the FDIC's rejection of its administrative claim, the FDIC should be equitably estopped from taking the position that North Beach failed to timely continue the suit**

"Equitable estoppel claims lodged against the government are of a different ilk from those asserted against a private party." *Bo-*

*kum v. Commissioner of Internal Revenue,* 992 F.2d 1136, 1141 (11th Cir.1993). The Supreme Court has stated that equitable estoppel does not lie against the government as against private litigants. *See Heckler v. Community Health Serv.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). "The Supreme Court has emphasized that it has 'reversed every finding of estoppel [against the government]' that has come before it." *Bokum,* 992 F.2d at 1141 (quoting *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)). However, the Supreme Court has not adopted a "flat rule" barring estoppel claims against the government, leaving open the question of whether such a claim is ever available. *See id.* at 420, 110 S.Ct. at 2469; *Heckler,* 467 U.S. at 60, 104 S.Ct. at 2224; *Bokum,* 992 F.2d at 1141.

While the availability of an estoppel claim against the government is uncertain, the Supreme Court has made it clear that "however heavy the burden might be when an estoppel is asserted against the government, the private party surely cannot prevail without at least demonstrating that the traditional elements of estoppel are present." *Bokum,* 992 F.2d at 1141 (quoting *Heckler,* 467 U.S. at 61, 104 S.Ct. at 2224); *see Ferry v. Hayden,* 954 F.2d 658, 661 (11th Cir.1992); *Brundidge Banking Co. v. Pike County Agric. Stabilization & Conservation Comm.,* 899 F.2d 1154, 1160 (11th Cir.1990).

It is unclear precisely when the government may be equitably estopped. *See Bokum,* 992 F.2d at 1141 n. 6; *Ferry,* 954 F.2d at 661 n. 6. However, because the Court holds that North Beach did not demonstrate an equitable estoppel claim would lie against even a private party, the Court need not decide whether such a claim would lie against the government. *See id.*

North Beach cannot establish all of the elements of a traditional equitable estoppel claim. These elements are: "(1) words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct or acquiescence; and (3) detrimental reliance by the

other party upon the state of things so indicated." *Bokum*, 992 F.2d at 1141 (citing *United States v. Aetna Ins. Co.*, 923 F.2d 1521, 1526 (11th Cir.1991) (quoting *FDIC v. Harrison*, 735 F.2d 408, 413 (11th Cir.1984))).

In order for a court to apply equitable estoppel, "the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse [,] and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Ferry*, 954 F.2d at 661 (quoting *Community Health Services*, 467 U.S. at 59, 104 S.Ct. at 2223).

There is no indication that North Beach was led by Plaintiffs to believe that because of the settlement negotiations North Beach would not have "to continue" the litigation in a timely fashion. Even though settlement negotiations were ongoing during this sixty day period, this did not relieve North Beach of its duty "to continue" its pre-existing litigation. North Beach did not reasonably rely on the settlement negotiations with First Union to allow its counterclaims against the FDIC to lapse by not filing a motion to renew within the sixty day period after its claims were denied by the FDIC.

North Beach, in support of its equitable estoppel argument, cites the case *Federal Deposit Insurance Corporation v. NMM Realty Development Corp.*, 1993 WL 258732 (S.D.N.Y.1993). The facts in that case, however, are extremely different than the instant case. In *NMM Realty Development Corp.* the FDIC affirmatively declared that the claimant would have an extension of time to seek a judicial determination of its claim. The court held that the FDIC was equitably estopped from claiming that the claimant is barred from pursuing its counterclaims because the FDIC led the claimant to believe that the FDIC was continuing to review the claim and that the time had been extended. *See id.* at *3.

In the instant case, North Beach was in no way led to believe that the time for continuing the action had been extended. North Beach has failed to show fraud, misrepresentation or other deception by the FDIC inducing reliance. *See e.g., Dade County v. Rohr Industries, Inc.*, 826 F.2d 983, 989 (11th Cir. 1987) (Plaintiff "has presented no evidence of deception on the part of the defendants, so the defendants are not estopped from bringing the statute of limitations defense").

Furthermore, it appears that the settlement negotiations that North Beach is referring to was between North Beach and First Union regarding a re-finance agreement. *See* Letter Dated July 28, 1993, from Mary S. Kearsey, Esq., counsel for North Beach, to Betsy Mahin, Esq. The FDIC in no way led North Beach to believe that it was still considering its claim or that North Beach's time for continuing its counterclaims was extended. Neither First Union nor the FDIC gave any indication to North Beach or its counsel that there was no need for North Beach to take any action to continue its counterclaims. North Beach was not free to sleep on its rights, just because of the settlement negotiations.

Moreover, the FDIC affirmatively set out North Beach's obligations under Section 1821(d)(6) in its correspondence to North Beach denying North Beach's claim. *See* Exhibit B to the Motion to Dismiss (Doc. No. 95). The FDIC also brought the requirements of Section 1821(d)(6) to the attention of North Beach in its Memorandum of Law in Opposition to North Beach's Motion for Remand (Doc. No. 48, filed September 3, 1992).

Consequently, the FDIC is not equitably estopped from taking the position that North Beach failed to timely continue the suit.

**C. North Beach's contention that the settlement negotiations constituted "continu[ing] an action" as required under 12 U.S.C. § 1821(d)(6)(A)(ii)**

■ The settlement negotiations were not sufficient affirmative action to continue the counterclaims. North Beach needed to take formal affirmative action in the form of a motion to renew or reactivate. *See Royal Trust Tower, Ltd.*, 827 F.Supp. at 1568.

"The legislative history of the statute contemplates a 'motion to renew.' " *Id.* at 1567; *see also* H.R.Rep. No. 54(I), 101st Cong., 1st

Session 418 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214 ("Any suit (or motion to renew a suit filed prior to appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim"). Furthermore, a reading of the statute as a whole indicates that throughout, Congress equated "continuing" a pre-existing claim with filing a motion to renew.

The meaning of unclear language in a statute may be clarified by its context within the statute as a whole. *See King v. St. Vincent's Hosp.*, — U.S. —, —, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *see also Crandon v. United States,* 494 U.S. 152, 157, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) (consider not only "the particular statutory language, but ... the design of the statute as a whole."). Comparing the subparagraph in issue, namely (d)(6)(B), with subparagraphs (d)(8)(C) and (d)(8)(D), which describes the limitations period for actions with expedited claim determinations by the FDIC, brings the Court to the conclusion that when Congress outlined the requirement "to continue" the pre-existing litigation it intended that the claimant should file a motion to renew. *See Royal Trust Tower, Ltd.,* 827 F.Supp. at 1567–68; *see also Rey v. Oak Tree Sav. Bank,* 817 F.Supp. 634, 636–37 (E.D.La.1993) (noting that claimants must file a motion to renew or reactivate following an administrative stay); *Mitchell v. Greenwood Bank of Bethel, Inc.,* 827 F.Supp. 106, 109 (N.D.N.Y. 1993) (requiring a "reactivation affidavit" in order to continue the action).

### III. CONCLUSION

In conclusion, the Court holds that 12 U.S.C. § 1821(d)(6)(B) required North Beach to file a motion to renew in order to "continue" the pre-existing litigation. The settlement negotiations did not arise to the level of continuing the pre-existing litigation under 12 U.S.C. § 1821(d)(6)(B) and the FDIC is not equitably estopped from taking the position that North Beach failed to continue the suit.

Once North Beach learned that its claims were disallowed by the FDIC, North Beach had the simple burden of filing a motion to renew with the Court. Since North Beach failed to do this, the initial determination by the FDIC is final and North Beach's claims are forever barred. Once a determination has become final, this Court has no authority to take any further action pursuant to the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D).

Accordingly,

(1) The FDIC's Motion to Dismiss Amended Counterclaim With Prejudice for Failure to Comply With the FIRREA Claims Procedure (Doc. No. 95) is **GRANTED,**

(2) North Beach's Amended Counterclaim against the FDIC is **DISMISSED WITH PREJUDICE,**

(3) The FDIC's Motion to Dismiss Amended Counterclaim With Prejudice for Failure to State a Valid Claim (Doc. No. 94) is **MOOT,**

(4) The Supplemental of FDIC's Motion to Dismiss Amended Counterclaim With Prejudice for Failure to Comply With the FIRREA Claims Procedure (Doc. No. 114) is **MOOT,**

(5) This action was originally commenced in state court and was subsequently removed to this Court by the FDIC on October 15, 1991 pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and (B). The only reason this action is in this Court is because of the counterclaims against the FDIC, and these counterclaims have been dismissed. Thus, the FDIC is no longer a party to these proceedings.

When it appears to a district court that it lacks subject matter jurisdiction at any time after removal, the case will be remanded to state court. 28 U.S.C. § 1447(c). The basis for removal was 12 U.S.C. § 1819. This section grants federal question jurisdiction over certain actions involving the FDIC. Because the FDIC is no longer a party, the Court has no basis for asserting jurisdiction over the state law claims. Accordingly, the case is remanded to the Fourth Judicial Circuit, in and for Duval County, Florida and

(6) The Clerk is directed to close the case.

**DONE AND ORDERED.**